## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

POWER RENTAL OP CO, LLC,

     Plaintiff,

v.                                 Case No. 3:20-cv-1015-J-32JRK

VIRGIN ISLANDS WATER &
POWER AUTHORITY,

     Defendant.

_____

## O R D E R

     This Florida garnishment case asks this question: In the era of online and electronic banking, where is the situs of a bank account for the purposes of prejudgment garnishment? The case comes before the Court on Defendant Virgin Islands Water & Power Authority's ("WAPA") Motion to Dissolve Pre-Judgment Writs of Garnishment (Doc. 23).

     In February 2020, Plaintiff Power Rental Op Co, LLC ("OpCo") notified WAPA that WAPA had defaulted on its obligations under a promissory note and demanded immediate payment. (Doc. 6-4 at 3). WAPA did not comply. Thus, in June 2020, OpCo filed a suit in the Duval County Circuit Court alleging three counts—breach of promissory note (Count I), services rendered (Count II), and quantum meruit (Count III). (Docs. 6; 1-1). On July 28, 2020, OpCo filed an ex parte motion for prejudgment writs of garnishment to garnish WAPA bank

accounts at FirstBank and Banco Popular. (Doc. 23 at 2). The state trial court granted OpCo's motion on July 29, 2020 and the Clerk of Court issued writs on July 30, 2020. (Docs. 23 at 2; 32-5). Subsequently, WAPA removed the case to this Court, and filed the pending motion to dissolve. (Docs. 23 at 2; 1). WAPA claims that the writs must be dissolved because: (1) OpCo's motion for prejudgment writs of garnishment contains falsehoods; (2) WAPA's accounts are located outside of Florida; and (3) WAPA's accounts are protected under the Virgin Island's sovereign immunity laws. (Doc. 23 at 6).

## I.    BACKGROUND[1]

OpCo is a Florida limited liability company with its principal place of business and headquarters in Florida. (Docs. 6 at ¶ 2; 34 at 4). WAPA is a municipal corporation existing under the laws of the United States Virgin Islands ("USVI") with a mandate to provide water and power to residential and commercial customers in USVI. (Doc. 6 at ¶ 3).

On February 15, 2012, General Electric International ("GE") entered into a contract with WAPA (the "Rental Agreement") for the provision of water and energy-related services and rental of power generation equipment and water

---

[1] The parties have submitted affidavits and other evidence in support of their filings. The Court also held a telephone hearing attended by the parties on November 24, 2020, the record of which is incorporated by reference. (Doc. 48).

treatment systems. (Doc. 6 at ¶ 7). In exchange for the equipment and services, WAPA was required to make monthly payments. (Doc. 6 at ¶ 8).

As a result of an acquisition of GE businesses in 2013, OpCo assumed the beneficial ownership of the Rental Agreement. (Doc. 6 at ¶ 9). While OpCo performed its obligations under the Rental Agreement, WAPA failed to make required monthly rental payments to OpCo. (Doc. 6 at ¶¶ 11–14). On April 30, 2019, the amount due and owed by WAPA to OpCo under the Rental Agreement was $14,291,986.00. (Doc. 6 at ¶ 12). OpCo subsequently agreed to a reduction of the outstanding balance to $9,310,971.00 in exchange for WAPA issuing a promissory note (the "Note") for the agreed upon reduced amount. (Doc. 6 at ¶ 13). The Note contains a clause on waiver of immunities, and is governed by New York substantive law. (Doc. 6-1 at 6).

OpCo filed its ex parte motion for prejudgment writs to garnish $2,696,760.90 from WAPA bank accounts at FirstBank and Banco Popular, purportedly located in Florida. (Docs. 32-4 at ¶ 1; 23 at 2). In support of its motion, OpCo submitted that WAPA failed to maintain a letter of credit as required under the Note. (Docs. 32 at 13). Additionally, OpCo filed a 2019 letter from a USVI congresswoman to the USVI Governor expressing her concern over WAPA's negative cash operating balance of $13 million and approximately $252 million debts in bonds, as well as a brief from a separate lawsuit that suggests WAPA is insolvent. (Docs. 32 at 13; 32-3). After the state court granted OpCo's

motion, OpCo served the writs of garnishment on branches of FirstBank and Popular Bank, a subsidiary of Banco Popular, in Miami, Florida. (Docs. 32-4; 23 at 2; 26).[2] WAPA, Banco Popular, and FirstBank assert that WAPA opened and maintains its bank accounts outside of Florida. (Docs. 21-1; 19).

## II.    FLORIDA GARNISHMENT LAW

Garnishment actions in Florida federal courts are governed by the procedures of the applicable Florida statutes.[3] Branch Banking & Trust Co. v. Hamilton Greens, LLC, No. 11-80507-CIV-MARRA/MATTHEWMAN, 2015 WL 5257668, at *3 (S.D. Fla. Sept. 8, 2015) ("Actions for garnishment in federal court are governed by applicable state law.") (referencing Federal Rules of Civil Procedure 64 and 69). In Florida, prejudgment garnishment is a statutory remedy governed by Chapter 77 of the Florida Statutes:

> To obtain issuance of the writ, the plaintiff, or the plaintiff's agent or attorney, shall file in the court where the action is pending a verified motion or affidavit alleging by specific facts the nature of the cause of action; the amount of the debt and that the debt for which the plaintiff sues is just, due, and unpaid; that the garnishment is not sued out to injure either the defendant or the garnishee; and that the plaintiff believes that the defendant will not have in his or her possession, after execution is issued, tangible or intangible property in this state and in the county in which the action is pending on which a levy can be made sufficient to satisfy the plaintiff's claim. The writ of garnishment shall set forth a

---

[2] There is a dispute as to whether Banco Popular and Popular Bank are separate entities. (Doc. 49 at 3–4).

[3] Florida procedural law is applicable here, even though the Note is governed substantively by New York law.

4

notice to the defendant of the right to an immediate hearing for dissolution of such writ. . . .

FLA. STAT. § 77.031(2).[4] Generally, the plaintiff must also provide a bond at least double the amount of the debt demanded. FLA. STAT. § 77.031(3).

As for the effect of writs, the Florida garnishment statute stipulates that "[s]ervice of [a] writ shall make garnishee liable for all debts due by him or her to defendant and for any tangible or intangible personal property of defendant in the garnishee's possession or control . . . ." FLA. STAT. § 77.06(1).

The questions before the Court are whether trial courts must have <u>in rem</u> jurisdiction over assets to issue a prejudgment writ of garnishment, and what is the situs/location of a bank account in light of modern banking practices. The answers to these questions are not evident based on the plain language of the garnishment statute. Thus, the Court proceeds to examine the jurisprudence of

---

[4] Under Chapter 77, a "prejudgment writ of garnishment must be dissolved 'unless the [plaintiff] proves the grounds upon which the writ was issued' and unless 'there is a reasonable probability that . . . final judgment . . . will be rendered in [the plaintiff's] favor.'" <u>Hurricane Towing, Inc. v. Petro Hydro, Inc.</u>, No. 99-1643-CIV-JORDAN, 2000 WL 1276754, at *1 (S.D. Fla. May 19, 2000) (quoting FLA. STAT. § 77.07(1)); <u>Branch Banking</u>, 2015 WL 5257668 at *7; <u>see also</u> <u>Land Title Guarantee Co. v. Downs</u>, No. 6-12-cv-485-Orl-28GJK, 2012 WL 1326232, at *2 (M.D. Fla. Apr. 17, 2012) ("If a prejudgment writ of garnishment is contested, however, the Plaintiff must prove the grounds upon which the request for the writ is based."); <u>Merriman Investments, LLC v. Ujowundu</u>, 123 So.3d 1191, 1193 (Fla. 3d DCA 2013) ("On a motion to dissolve, the petitioner must prove the grounds upon which the writ was issued, including the debtor's ownership of the garnished property.").

the Florida state courts and the Middle District, as well as interpretations of the Florida garnishment statute advanced by WAPA and OpCo.

### A.   Florida State Court Jurisprudence

"[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." West v. American Tel. & Tel. Co., 311 U.S. 223, 236 (1940). Federal courts sitting in diversity must also "follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." Stoner v. New York Life Ins. Co., 311 U.S. 464, 467 (1940); see also Carlson v. FedEx Ground Package Sys., Inc., 787 F.3d 1313, 1326 (11th Cir. 2015) ("By ruling consistently with [the state appellate court], we ensure that this case is decided in a Florida federal court as it would be in a Florida state court, and thereby discourage forum shopping as between federal and state courts in Florida and prevent the inequitable administration of the law.").

The Florida Supreme Court has explained that "[g]arnishment is a creature of statute, unknown at common law." Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc., 982 So.2d 628, 632 (Fla. 2008); see also Florida Power & Light Co. v. Crabtree Const. Co., Inc., 283 So.2d 570, 572 (Fla. 4th DCA 1973) ("Garnishment was unknown to the common law and exists only by

statutory mandate."). As such, this provisional remedy "is not to be extended beyond the provisions of the statute which must be strictly followed." Thompson v. Commercial Union Ins. Co. of New York, 267 So.2d 18, 20 (Fla. 1st DCA 1972); see also Arnold, at 982 So.2d at 633 (Courts "must construe the statute in accordance with legislative intent by looking primarily at the statutory language.").

The earliest identified case on the applicability of the Florida garnishment statute to funds held in bank accounts outside the territorial limits of Florida is Ellis v. Barclays Bank PLC-Miami Agency. 594 So.2d 826 (Fla. 3d DCA 1992). In Ellis, the Florida Third District Court of Appeal ruled that a post-judgment writ of garnishment served on the U.S. branch of an international bank could not reach a judgment debtor's deposits held in foreign branches of the bank. Id. at 827. In so ruling, the Ellis court cited two Florida cases, which provide additional insight into the court's interpretation of the garnishment statute. See Tueta v. Rodriguez, 176 So.2d 550, 552 (Fla. 2d DCA 1965); State ex rel. Florida Bank & Trust Co. v. White, 21 So.2d 213, 215 (Fla. 1944). Specifically, the cases referenced by the Ellis court express that "[a] court may not proceed in-rem or quasi-in-rem when the subject matter of the action is not within the territorial jurisdiction of the court." Tueta, 176 So.2d at 552; see also State ex rel. Florida Bank, 21 So.2d at 215 ("A court has no jurisdiction to adjudicate the right of action in the rem when the property in

controversy is without the limits of the court's jurisdiction and its process cannot reach the locus in quo.").

Florida appellate courts still view this proposition as an accurate statement of Florida law. See Sargeant v. Al-Saleh, 137 So.3d 432, 433–35 (Fla. 4th DCA 2014) (deciding that because stock certificates were located in the Bahamas, the Netherlands, Jordan, the Isle of Man, and the Dominican Republic, the trial court erred in compelling their turnover); Burns v. State, Dept. of Legal Affairs, 147 So.3d 95, 97 (Fla. 5th DCA 2014) ("In this case, because the bank accounts are located in foreign jurisdictions, the trial court does not have jurisdiction over the property in the forfeiture proceeding."); see also Paciocco v. Young, Stern & Tannebaum, P.A., 481 So.2d 39, 39 (Fla. 3d DCA 1985) (per curiam) (setting aside transfers of notes and assignments of mortgages on property located in New York, and holding that [a] Florida trial court has no in rem jurisdiction over notes secured by mortgages on real property located in a foreign state, to wit: New York.").

OpCo has cited to court decisions involving writs of replevin and the execution of judgments that express that "a court which has obtained in personam jurisdiction over a defendant may order that defendant to act on property that is outside of the court's jurisdiction, provided that the court does not directly affect the title to the property while it remains in the foreign jurisdiction." General Elec. Capital Corp. v. Advance Petroleum, Inc., 660 So.2d

1139, 1142 (Fla. 3d DCA 1995) (emphasis in original) (determining that the trial court had the power to require the plaintiff to locate and return an aircraft on which the defendant had a perfected lien to Dade County, so as to proceed with the court's order of foreclosure.); see also Schanck v. Gayhart, 245 So.3d 970, 974 (Fla. 1st DCA 2018) (ruling that the "court had jurisdiction to either order Appellant to return or reissue the[stock and membership certificates], as neither remedy would directly affect title to the certificates while they remained in Canada"). The facts of those cases are dissimilar to those here, and the Court has not identified any decisions applying such logic in garnishment proceedings concerning bank accounts. In addition, the Florida Fourth District Court of Appeal has raised concerns over Florida courts ordering debtors to bring out-of-state property into Florida. See Sargeant, 137 So.3d at 435. In Sargeant, the state appellate court ruled that a trial court did not have the authority to order debtors subject to its personal jurisdiction to turn over foreign stock certificates, and "emphasiz[ed] that allowing trial courts to compel judgment debtors to bring out-of-state assets into Florida would effectively eviscerate the domestication of foreign judgment statutes." Id.; see also In re McCuan, No. 9:14-bk-00965-FMD, 2018 WL 11206025, at *2–3 (Bankr. M.D. Fla. Feb. 13, 2018) (denying motion for rehearing where the Court found that Florida law did not permit a creditor to garnish or otherwise execute on investments held by an out-of-state investment and trust company) (referencing Sargeant and Burns).

As for how to identify the situs of bank accounts, especially in the age of online and electronic banking, neither the Court nor the parties have identified state court cases directly on point. However, in a case concerning in rem jurisdiction, the Florida Supreme Court has reasoned that "the constructive situs of intangibles is often equivalent to their physical situs and the constructive situs is ample to give jurisdiction of them to the courts of the state where they are constructively located[,]" and as a result "actual physical situs may become immaterial." Henderson v. Usher, 160 So. 9, 11 (Fla. 1935).

## B.   Cases from the Middle District of Florida

This Court's earliest identified case on point is APR Energy, LLC v. Pakistan Power Resources, LLC, where prejudgment writs of garnishment were served on Wachovia Bank and BancFirst. No. 3:08-cv-961-J-25MCR, 2009 WL 425975, at *2–3 (M.D. Fla. Feb. 20, 2009).[5] The Court dissolved the writ as to BancFirst because the Defendant's BancFirst accounts were located in Oklahoma. Id. at *2–3. BancFirst had its headquarters and principal place of business in Oklahoma, and did not maintain a facility, branch office, or any other place of business in Florida. APR Energy, 2009 WL 425975, Doc. 12, ¶¶ 3–5. The Court rejected the plaintiff's argument that bank accounts have no

---

[5] While Wachovia Bank was not indebted to the Defendants, BancFirst was. See APR Energy, 2009 WL 425975, Doc. 25; APR Energy, 2009 WL 425975, Doc. 12.

actual situs and that accounts may be garnished wherever there is jurisdiction over the garnishee. APR Energy, 2009 WL 425975, at *2 n.2.

Later, in Stansell v. Revolutionary Armed Forces of Colombia (FARC), the Court issued its most in-depth analysis of the applicability of the Florida garnishment statute to funds held in bank accounts outside the territorial limits of Florida. 149 F. Supp. 3d 1337, 1338 (M.D. Fla 2015) (Stansell I). In Stansell I, writs of post-judgment garnishment were directed at bank accounts established at the New York branches of numerous banks, including Deutsche Bank, JP Morgan Chase Bank, and Bank of New York Mellon. Id. at 1338–39. The Court concluded that it lacked subject matter jurisdiction to garnish the accounts because they were held at out-of-state branches. Stansell I, 149 F. Supp. 3d at 1339. Accordingly, the Court dissolved the issued writs. Id. at 1342.[6]

The Court's underlying reasoning in Stansell I mirrored earlier Florida state court decisions. The Court determined that, to issue a prejudgment writ of garnishment under Chapter 77, courts must have personal jurisdiction over the garnishee as well as in rem jurisdiction over the property that is the subject of the writ.[7] Id. at 1339. "[N]othing in the language or structure of the Florida

---

[6] It was implied that some of these large national banks had Florida branches, but this did not sway the outcome of the case. See Stansell I, 149 F. Supp. 3d, Doc. 1041, at 3 n.1.

[7] The Stansell I court expressed that "[w]hile personal jurisdiction may be waived, 'in rem jurisdiction is a very special type of necessary judicial subject matter jurisdiction' under Florida law—one that cannot be waived." Id. 1339–

garnishment statutes demonstrates that they were intended to apply to bank accounts located outside the state of Florida." Id. at 1341; see also Linstol USA, LLC v. Midway Advanced Prod., LLC, No. 2:18-cv-669-FtM-38NPM, 2020 WL 224527, at *1 (M.D. Fla. Jan. 15, 2020) ("Garnishment statutes must be strictly interpreted and [i]nterpreting a garnishment statute to apply to bank accounts located outside the state despite the absence of any explicit statutory language to that effect would violate this principle of strict construction.") (internal quotation marks omitted) (alteration in original).

The jurisdictional standard set forth in Stansell I continues to be applied in this district, and decisions of this Court consistently reflect that the Florida garnishment statute does not apply to bank accounts located outside of Florida. See, e.g., Linstol, 2020 WL 224527 at *1 (dissolving post-judgment writs of garnishment because the defendant's bank had its headquarters and principal place of business in Utah and did not operate branches or have accounts in Florida); see also Lapinski v. St. Croix Condominium Ass'n, Inc., No. 6:16-cv-1418-Orl-40GJK, 2019 WL 1491568 (M.D. Fla. Jan. 24, 2019).

## III.  DISCUSSION

WAPA argues that this Court should apply the reasoning in Stansell I in the present case. (Docs. 38, 65). In contrast, OpCo urges the Court to abandon

---

40. (quoting Center Capital Corp. v. Gulfstream Crane, LLC, No. 09-61021-CIV, 2009 WL 4909430, at *7 (S.D. Fla. Nov. 25, 2009)).

Stansell I, and interpret the Florida garnishment statute in accord with certain decisions rendered by the Southern District of Florida. (Docs. 32 at 18–20, 49, 64). In particular, OpCo relies heavily on the cases Stansell v. Revolutionary Armed Forces of Colombia, No. 19-20896-CV, 2019 WL 5291044, at *1 (S.D. Fla. Aug. 21, 2019), report and recommendation adopted sub nom. Stansell v. Revolutionary Armed Forces of Columbia, No. 19-20896-CIV, 2019 WL 5290922 (S.D. Fla. Sept. 26, 2019) (Stansell II) and Tribie v. United Development Group Intern. LLC, No. 07-22135-CIV, 2008 WL 5120769, at *3 (S.D. Fla. Dec. 2, 2008). See also Stansell v. Revolutionary Armed Forces of Colombia, No. 19-20896-Civ-Scola, 2020 WL 5547916 (S.D. Fla. Apr. 30, 2020) (Stansell III).

In Stansell II, movants, Lopez Bello and several companies that he controlled, moved to dissolve post-judgment writs garnishing their bank and securities accounts at UBS Financial Services, Raymond James & Associates, Morgan Stanley, Safra National Bank of New York, Branch Banking & Trust Co., and Citibank, which all have national footprints. 2019 WL 5291044 at *1, 3. The movants argued that the court did not have jurisdiction over the accounts because the plaintiff failed to prove that the accounts (or account assets) were located in Florida. Id. at *7. In the Report and Recommendation, Magistrate Judge Edwin Torres disagreed, determining that the plaintiffs had pointed to

record evidence showing that the relevant assets were located solely in Florida.[8]
Id. at *6. The movants, therefore, had the burden of rebutting the plaintiffs'
evidence, by showing that the assets or accounts were located out-of-state. Id.
They failed to do so, however. Id. at *6–7. The Report and Recommendation
states, in relevant part that:

> [The] [m]ovants cannot point us to any evidence that could support
> its claim that the assets are located outside the state. It is not as
> if this would be terribly difficult to do: [the] [m]ovants could have
> provided deposit slips, documents related to each account's
> opening, or other information showing that the accounts are
> 'located' in a different state. The fact that [the] [m]ovants failed to
> do so is quite telling, and allows us to conclude that he cannot
> make such a showing. For purposes of these Motions, vague
> arguments about the possibility that the funds are being 'held'
> elsewhere is insufficient to prevail on a factual attack to this
> Court's subject matter jurisdiction.
>
> After all, modern banking is mostly performed online, with
> customers having worldwide access to electronic accounts,
> maintained by large financial institutions without the need to hold
> such 'funds' at a fixed situs. So Plaintiffs' prima facie showing is
> sufficient given these practical considerations. To rebut such a
> showing, [the movants] must demonstrate – not merely allege –
> that these funds do, indeed, have a fixed situs elsewhere.[9]

---

[8] Judge Torres also found it relevant that the companies with interests in
the accounts were primarily Florida corporations. Stansell II, 2019 WL
5291044 at *6 (S.D. Fla.).

[9] Magistrate Judge Torres expressed that the court "need not . . .
determine whether the . . . language [of the garnishment statute] bars
extraterritorial garnishment." Stansell II, 2019 WL 5291044 at *6. Judge
Torres came to this conclusion because the record supported that relevant
assets were in Florida. Id. at *7. Even so, the court "decline[d] to 'read in' a
geographical limitation to the garnishment statute." Compare id. at *6 with
Stansell I, 149 F. Supp. 3d 1337, 1340 ("[N]othing in the language of the Florida

Id. (internal citations omitted) (emphasis in original).

Magistrate Judge Torres's report can be read consistently with this Court's jurisprudence.[10] Nevertheless, in the order adopting the Report and Recommendation, Judge Robert N. Scola, Jr. took a more expansive view of the Florida garnishment statute's scope, expressing that the court had subject matter jurisdiction to garnish the accounts regardless of their location. Stansell II, 2019 WL 5290922 at *2; see also Stansell III, 2020 WL 5547916, at *2. Judge Scola cited dictum from the Tribie decision that the separate entity rule, which "holds that each branch of a bank is a separate legal entity in the context of a garnishment action, and is in no way connected with accounts maintained by depositors at other branches, or at the home office," is not the law in Florida. 2008 WL 5120769 at *3.[11] OpCo interprets Tribie and Stansell II to mean that a trial court has jurisdiction over accounts held by a garnishee bank so long as

---

garnishment statutes suggests that they were intended to have extraterritorial application. Interpreting a garnishment statute to apply to bank accounts located outside the state despite the absence of any explicit statutory language to that effect would violate this principle of strict construction.").

[10] The Report and Recommendation in Stansell II compared the movants case with Stansell I and APR Energy, finding that there was no dispute that the accounts in those cases were located outside of Florida. 2019 WL 5291044 at *7.

[11] The holding in Tribie is that (1) a court has a personal jurisdiction over a garnishee bank anywhere the garnishee bank has a branch or agent for service of process, and (2) where a court has personal jurisdiction over a garnishee bank, the bank must answer to a properly served writ of garnishment. 2008 WL 5120769 at *3–5. It is narrower than OpCo suggests.

the court has jurisdiction over a branch of the garnishee bank, and urges the Court to apply this reasoning in the present proceedings. (Doc. 32 at 18–20). The Court declines to do so.

First, this Court has not identified any Florida state court decisions that categorically disavow the separate entity rule. Rather, at least one Florida appellate court has cited New York state court cases endorsing the separate entity rule in support of a decision to dissolve writs of garnishment. See Ellis, 594 So.2d at 827 (citing Bluebird Undergarment Corp. v. Gomez, 249 N.Y.S. 319, 322 (N.Y. Cty. Ct. 1931) (reasoning "[t]he defendant could not commence an action against the bank in New York for the deposit made by him in the Porto [sic] Rico branch."); Clinton Trust Co. v. Compania Azucarera Central Ramona S.A., 14 N.Y.S.2d 743 (N.Y. Special Term 1939) (declining to attach accounts at a branch in Cuba).

Second, at least one Florida appellate court has held that a Florida court lacks the authority to compel the turnover of out-of-state assets, even if it can exercise in personam jurisdiction over the judgment debtors and had issued the judgment. See Sargeant, 137 So.3d at 435. Although the Sargeant case does not involve Florida's garnishment procedures, the principles underlying the opinion are relevant. Id. In particular, the court found it inappropriate to extend the reach of a Florida statute pertaining to the execution of judgments beyond Florida, even though the statute did not include an express territorial

limitation. See id. This Court has applied similar logic in recent garnishment cases, ruling that "[i]nterpreting a garnishment statute to apply to bank accounts located outside the state despite the absence of any explicit statutory language to that effect would violate [the] principle of strict construction." Linstol, 2020 WL 224527 at *1.[12]

Third, the dominant view reflected in jurisprudence of Florida state courts is that "[a] court may not proceed in-rem or quasi-in-rem when the subject matter of the action is not within the territorial jurisdiction of the court." Tueta, 176 So.2d at 552 (denying petition for rehearing) (cited in Ellis, 594 So.2d at 827); see also Burns, 147 So.3d 95, 97 (Fla. 5th DCA 2014).

Fourth, this Court's decisions reflect that a bank account has a particular situs and does not exist everywhere that a bank has branches. See, e.g., Stansell I, 149 F. Supp. 3d.[13]

---

[12] The language of the statute also indicates that the purpose of prejudgment writs is to prevent property from being removed from Florida before a court sitting in Florida issues a judgment. FLA. STAT. § 77.031(2) ("To obtain issuance of the writ, the plaintiff, or the plaintiff's agent or attorney, shall file in the court where the action is pending a verified motion or affidavit alleging . . . that the defendant will not have in his or her possession, after execution is issued, tangible or intangible property in this state and in the county in which the action is pending on which a levy can be made sufficient to satisfy the plaintiff's claim.").

[13] Even if accounts were to exist "everywhere" in a technical sense, the situs of intangible assets is a creature of law. Severnoe Secs. Corp. v. London & Lancashire Ins. Co., 174 N.E. 299, 300 (N.Y. 1931).

Fifth, the Southern District of Florida, notwithstanding Stansell II and Stansell III, continues to apply the Florida garnishment statute in a manner consistent with this Court's case law.[14] In October 2020, the Southern District of Florida adopted Magistrate Judge Lauren F. Louis's Report and Recommendation, recommending that the court deny a motion for writs of post-judgment garnishment in Inversiones Y Procesadora Tropical Inprotsa, S.A. v. Del Monte Int'l GMBH, No. 16-24275-CV, 2020 WL 6384878, at *4 (S.D. Fla. Aug. 5, 2020), report and recommendation adopted, No. 16-24275-CIV, 2020 WL 6384299 (S.D. Fla. Oct. 30, 2020). Magistrate Judge Louis declared that all of the relevant funds were "held outside of the state of Florida and, thus, are beyond the reach of a Florida writ of garnishment." Id. Additionally, in Skulas v. Loiselle, the Southern District adopted Magistrate Judge John J. O'Sullivan's Report and Recommendation, which reasoned that writs of post-judgment garnishment should be dissolved because, although the garnishee bank had Florida branches, the defendant maintained accounts at a Pennsylvania branch. No. 09-60096-CIV, 2010 WL 1790439, at *2 (S.D. Fla. Apr. 9,

---

[14] OpCo has also identified several unpublished and unreported Southern District of Florida decisions issued in the early-2000s granting motions for writs of prejudgment garnishment as to out-of-state bank accounts. The decisions do not provide any rationale for the grant of the motions, and they are accorded limited weight given that they are contrary to the case law of Florida state courts.

2010), <u>report and recommendation adopted</u>, No. 09-60096-CIV, 2010 WL 1790433 (S.D. Fla. May 5, 2010)

The Court thus rejects OpCo's expansive reading of the Florida garnishment statute. <u>See</u> <u>West</u>, 311 U.S. at 236–37 ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.") (internal quotation marks omitted); <u>see also</u> <u>In re Curtina Int's</u>, 15 B.R. 993, 998 (Bankr. S.D.N.Y. 1981) ("Although [Federal Rule of Civil Procedure 64] . . . incorporate[s] the provisional remedies available in the forum state, [Rule 64] do[es] not broaden the remedies nor make them available beyond their territorial limitations."). <u>Cf.</u> <u>GM Gold & Diamonds, LP v. Fabrege Co., Inc.</u>, 489 F.Supp.2d 725, 728–29 (S.D. Tex. 2007) ("The statutes are silent on the issue of extraterritoriality, and the court should not infer any such unexpressed intent on behalf of the legislature. As Texas courts have suggested, and other state courts have held, the remedy of attachment has a well-defined territorial limit, and the court sees no reason to depart from this approach.").

The Court holds that the Florida garnishment statute does not apply extraterritorially to out-of-state bank accounts.[15] See generally Stansell I, 149 F. Supp. 3d; Burns, 147 So.3d at 97. Under the Florida garnishment statute, trial courts must have in rem jurisdiction over bank accounts to garnish them. See Linstol, 2020 WL 224527 at *1–2; see also Burns, 147 So.3d at 97; Tueta, 176 So.2d at 552. While true that given their intangible nature and modern banking practices, bank accounts may have more than one situs for garnishment purposes, see Henderson, 160 So. at 10 (reasoning that "constructive situs is ample to give jurisdiction . . . to the courts of the state where [assets] are constructively located"); Yayasan Sabah Dua Shipping SDN BHD v. Scandinavian Liquid Carriers Ltd, 335 F. Supp. 2d 441, 448 (S.D.N.Y. 2004) ("In this wired age, the location of an intangible, especially a bank account, is a metaphysical question. By and large, bank deposits exist as electronic impulses embedded in silicone chips. In a sense, therefore, bank funds are both everywhere and nowhere."), they are not located everywhere that a garnishee bank has a branch. See Severnoe Secs. Corp., 174 NE at 300 ("At the root of selecting a situs is generally a common sense appraisal of the requirements of justice and convenience in particular conditions."). As

---

[15] This interpretation is consistent with the questions of due process and comity that might arise if the Court were to issue extraterritorial writs of attachments.

explained by Magistrate Judge Torres in <u>Stansell II</u>, helpful indicia for identifying an account's location include deposit slips, documents related to an account's opening, and other similar information. 2019 WL 5291044 at *6–7.[16] In addition, when faced with a motion to dissolve prejudgment writs, the party that sought the issuance of the writs has the burden of presenting <u>prima facie</u> evidence demonstrating that the relevant bank accounts are located within the Court's jurisdiction. See <u>Stansell II</u>, 2019 WL 5291044 at *6 (determining that the court had "subject matter jurisdiction over the accounts at issue, unless

---

[16] In <u>Aurelius Capital Partners, LP v. Republic of Argentina</u>, a Foreign Sovereign Immunities Act case, the District Court for the Southern District of New York, reasoned that the issue of where intangible securities accounts were located could be "resolved on the basis of rudimentary facts."

> All the dealings of ANSES in setting up the [securities] accounts, depositing securities into the accounts (whether electronically or by paper), giving instructions to Citibank regarding the accounts, receiving advice regarding the accounts, directing the sale and purchase of securities—all were made between ANSES and the Citibank branch in Argentina [rather than the branch in New York]. Although the property is properly regarded as intangible property, there were and still are actual live transactions regarding that property, all of which have taken place, and are taking place, in Argentina. As far as the use of the assets for whatever activity they are used for, this would surely involve dealings in Argentina by ANSES, and between ANSES and the Citibank branch there.

> Thus, the court concludes that the property in question is not located in the United States.

Nos. 07 Civ. 2715(TPG), 07 Civ. 11327(TPG), 07 Civ. 2693(TPG), 09 Civ. 8757(TPG), 09 Civ. 10620(TPG), 2010 WL 768874, at *2 (S.D.N.Y. Mar. 5, 2010).

[the] [m]ovants [could] rebut [the plaintiff's] prima facie evidence.") (emphasis in original); see also Lapinski, 2019 WL 1491568 at *1 (The parties that moved the Court to issue the writ of garnishment "have not demonstrated that the Court has jurisdiction to issue the writ to a garnishee located outside this Court's jurisdictional boundaries.").

Here, OpCo has failed to demonstrate that WAPA has bank accounts located in Florida. OpCo has shown no Florida connection to WAPA's FirstBank and Banco Popular accounts. Instead, OpCo has submitted documents that suggest WAPA wired over $5 million to OpCo from accounts at FirstBank and Banco Popular branches in Puerto Rico. (Docs. 49 at 3; 49-1; 49-2). In addition, FirstBank, Banco Popular, and WAPA's filings all indicate that WAPA never opened, maintained, or accessed accounts at FirstBank or Banco Popular in Florida. (Docs. 20-1 at ¶¶ 6–10; 21-1 at 3; 12-1 at 3–4). Therefore, the Court does not have in rem jurisdiction over WAPA's accounts at FirstBank and Banco Popular. [17] Accordingly, garnishee banks that are currently subject to the prejudgment writs of garnishment granted by the state court with respect to

---

[17] OpCo has also not demonstrated that FirstBank operates branches in the Middle District of Florida. See Lapinski, 2019 WL 1491568, at *1 (M.D. Fla. Jan. 24, 2019) (denying a motion for post-judgment writs of garnishment because the "[d]efendants [did] not demonstrate[] that the Court ha[d] jurisdiction to issue the writ to a garnishee located outside [of the Middle District of Florida].") ; (Doc. 61 at 43, 54).

No. 3:20-cv-1015-J-32JRK

funds held in accounts outside the State of Florida are entitled to have those writs dissolved.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Virgin Islands Water & Power Authority's Motion to Dissolve Writs of Garnishment (Doc. 23) is **GRANTED**.

2. The Prejudgment Writs of Garnishment issued with respect to FirstBank and Banco Popular (Doc. 32-5) are **DISSOLVED**.

**DONE AND ORDERED** in Jacksonville, Florida the 27th day of January, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

tn
Copies:

Counsel of record