# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

POWER RENTAL OP CO, LLC

   Plaintiff,

v.             Case No. 3:20-cv-1015-TJC-JRK

VIRGIN ISLANDS WATER &
POWER AUTHORITY,

   Defendant.

## **O R D E R**

This breach of promissory note case comes before the Court upon Plaintiff Power Rental Op Co's ("OpCo") Motion for Summary Judgment (Doc. 73), to which Defendant Virgin Islands Water & Power Authority ("WAPA") has responded (Doc. 83). OpCo has also filed a reply (Doc. 88).

**I. FACTS**

 **A. WAPA and OpCo's Business Relationship**

OpCo is a Florida limited liability company with its principal place of business and headquarters in Florida. Docs. 6 at ¶ 2; 66 ¶ 2. WAPA is a municipal corporation existing under the laws of the United States Virgin Islands ("USVI") with a mandate to provide water and power to residential and commercial customers in the USVI. Docs. 20-1 ¶ 2; 6 at ¶ 3. WAPA does not have offices or

employees in Florida. Doc. 20-1 at ¶¶ 3–6. WAPA also does not provide services in Florida. Id. ¶¶ 2, 4.

On February 15, 2012, General Electric International ("GE") entered into a contract (the "Rental Agreement") with WAPA for the provision of water and energy-related services and rental of power generation equipment and water treatment systems. See Docs. 6-2; 6 at ¶ 7; 66 ¶ 7. In exchange for the equipment and services, WAPA was required to make monthly payments. Docs. 6 at ¶ 8; 66 ¶ 8.

In 2013, due to an acquisition of GE businesses, OpCo assumed ownership of the Rental Agreement. Docs. 6 at ¶ 9; 74 ¶ 3. Between 2013 and 2019, OpCo and WAPA made numerous modifications to the Rental Agreement. See Docs. 34-1 ¶¶ 7, 11–12; 6-3 at 2. Via thirteen change orders, the parties, among other changes, modified the contract price and the monthly payment rate, extended the rental term, and added a new provision on environmental compliance and indemnification to the Rental Agreement. See Docs. 6-3 at 4, 7, 9–10, 14, 24; 73-1 at 1. The change orders also memorialize WAPA's agreement to rent additional power plant equipment and purchase additional services from OpCo. See Docs. 6-3 at 4, 7, 9–10, 14, 24; 73-1 at 1. The modifications to the Rental Agreement were primarily made at WAPA's request and pursuant to telephone negotiations between USVI-based WAPA representatives and Florida-based OpCo representatives. See Docs. 34-1 ¶¶ 7, 11–12; 6-3 at 2. Over the course of OpCo

2

and WAPA's business relationship, WAPA transmitted service requests for equipment maintenance, customer support, and replacement parts to Florida-based OpCo employees. Doc. 34-1 ¶ 17.

Eventually, WAPA stopped making the monthly payments required under the Rental Agreement; thus, on April 30, 2019, the amount owed by WAPA under the Rental Agreement was $14,291,986.00. See Docs. 6 ¶¶ 12; 73-1 at 2. OpCo subsequently agreed to a reduction of the outstanding balance to $9,310,971 in exchange for WAPA issuing a promissory note (the "Note") to OpCo for the agreed reduced amount. Docs. 73-1 at 2; 6 ¶¶ 13, 17; 66 ¶¶ 13, 17; see also Doc. 74 ¶ 14 ("Neither WAPA nor OpCo modified or otherwise amended the Note in writing subsequent to the execution of the Note."). The Note is governed by New York substantive law, and its terms required WAPA to pay OpCo in twenty equal monthly installments of $507,354.00 until the Maturity Date of December 1, 2020 (a total of $9,310,971.00 plus interest). See Docs. 73-1 at 3, 6; 74 ¶ 13; 6 ¶ 17; 66 ¶ 17. Under the Note, WAPA also agreed to pay ten percent interest per annum on the outstanding principal amount until the principal was paid in full. See Doc. 73-1 at 3.

The Note stipulates that WAPA's failure to make a payment within five business days following written notice of nonpayment by OpCo constitutes a default event. See Doc. 73-1 at 4. The Note further specifies:

> Upon the occurrence of [a default event], all then outstanding principal and accrued interest hereunder shall, at the sole selection of [OpCo], become immediately due and payable in full . . . . Interest shall accrue, and shall be payable on demand, on the outstanding principal balance of this Note from and after the date of any [default event] . . . at a rate equal to three percent . . . per annum in excess of the interest rate otherwise applicable at the time of such default.

Doc. 73-1 at 4–5. The Note also contains a clause on waiver of immunities and a clause on waiver of defenses that states "[w]ith respect to the Agreed Contract Arrearage, [WAPA] waives any defenses, right of set off or any other claim [WAPA] has or may have against [OpCo]." Id. at 4–5.

## B. WAPA's Failure to Make Payments Under the Note

WAPA made six of the twenty monthly payments required under the Note. Docs. 74 ¶ 15; 6 ¶ 19; 66 ¶ 19. On February 6, 2020, OpCo mailed WAPA a notice, stating that WAPA had failed to make its January 2020 payment and that WAPA had "five business days to cure the default." Doc. 6-4 at 2. On February 27, 2020, OpCo mailed WAPA a notice, explaining that WAPA was in default under the Note and demanding immediate payment of the Note's outstanding principal and accrued interest. See Docs. 6-4 at 3; 6 ¶ 21; 66 ¶ 21.[1] In June 2020, OpCo filed

---

[1] The declaration of Christopher King, Vice President of Commercial Support of OpCo, filed in support of OpCo's motion for summary judgment, provides that OpCo also mailed WAPA a notice of default in December 2019. Doc. 74 ¶ 17. While OpCo pleaded that it mailed the February 2020 notices in its complaint, OpCo did not plead that OpCo mailed the December 2019 notice in its complaint. Because of this pleading deficiency and the fact that OpCo has not submitted a copy of the December 2019 notice, the Court will only consider the

4

suit in Florida state court alleging three counts for breach of promissory note (Count I), services rendered (Count II), and quantum meruit (Count III). Doc. 1-1. Subsequently, WAPA removed the case to this Court. Docs. 1, 6. OpCo seeks recovery of $5,393,521.81, plus interest, fees, and costs. Doc. 73 at 4.

## II. DISCUSSION

### A. WAPA's Jurisdictional Challenge

A federal court sitting in Florida may properly exercise personal jurisdiction only if the requirements of (1) Florida's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied. See Story v. Heartland Payment Sys., LLC, 461 F. Supp. 3d 1216, 1225 (M.D. Fla. 2020) (citing United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)); Fed. R. Civ. P. 4(k)(2).

WAPA seeks to reargue issues addressed at the November 24, 2020 hearing (Doc. 57) and in the Court's November 30, 2020 Order (Doc. 55) denying WAPA's motion to dismiss for lack of personal jurisdiction. WAPA asserts that "[t]he parties' divergent views on facts bearing on this Court's exercise of personal jurisdiction constitute a genuine issue of material fact." Doc. 83 at 7. However, the Court maintains that it may exercise jurisdiction over WAPA and expounds on its position below.

---

February 2020 notices in determining whether WAPA breached the Note.

### 1. The Court has specific jurisdiction under the breach-of-contract provision of the Florida long-arm statute.

The Florida long-arm statute confers personal jurisdiction over a defendant who "[b]reach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state." FLA. STAT. § 48.193(1)(a)(7); see also RG Golf Warehouse, Inc. v. Golf Warehouse., 362 F. Supp. 3d 1226, 1238 (M.D. Fla. 2019) ("Failure to make payments owed under a contract where payment is due to be made in Florida is sufficient to satisfy Section (1)(a)(7) of Florida's long-arm statute.") (internal quotation marks omitted). Here, WAPA breached the Note by failing to make payments to OpCo. See Docs. 6 ¶ 19; 66 ¶ 19; 74 ¶ 15. With respect to the place of payment, the Note stipulates that WAPA "hereby promises to pay to the order of [OpCo] at 3600 Port Jacksonville Parkway, Jacksonville, Florida" the principal sum plus interest, and that WAPA was to make the payments via wire transfer to OpCo's New York bank account. See Doc. 73-1 at 3. Note payment invoices sent to WAPA by OpCo also state that balances were payable to OpCo through its New York bank account. See Doc. 34-1 at ¶¶ 14–15.

WAPA asserts that since it only wired payments to the New York bank, payment was due and made in New York, not Florida. See Docs. 20 at 5; 20-1 ¶ 11. However, as the Court indicated at the motion to dismiss stage, WAPA's reasoning is flawed. WAPA's debt is owed to OpCo, a Florida limited liability

company with its headquarters and principal place of business in Florida, and the New York account to which the Note required WAPA to wire payments did not have an existence independent of OpCo's Florida headquarters, which managed, accessed, and maintained the account. Doc. 34-1 ¶ 10. Accordingly, payment under the Note was due in Florida, not New York.

### 2. The Court's exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.

The Eleventh Circuit employs a three-part test to determine whether exercising specific jurisdiction comports with due process (or whether there are sufficient "minimum contacts"), examining:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

Dean v. Easterling, No. 3:19-cv-566-J-32JRK, 2020 WL 1665482, at *5 (M.D. Fla. Apr. 3, 2020) (citing Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013)). "[W]hen inspecting a contractual relationship for minimum contacts, [the Eleventh Circuit] follow[s] a 'highly realistic approach' that focuses on the substance of the transaction: prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1267–68

7

(11th Cir. 2010) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985)).

In conducting due process analyses, Florida courts have "recognize[d] that when the failure to pay a debt owed in this state, whether as the primary obligor or guarantor, is accompanied by some other related substantial act in Florida that is purposefully directed toward the state or its residents, the exercise of personal jurisdiction over such nonresident defendants is proper." deMco Techs., Inc. v. C.S. Engineered Castings, Inc., 769 So. 2d 1128, 1131 (Fla. 3d DCA 2000); see also Kasparov v. Schnorenberg, No. 3:15-cv-1093-J-32PDB, 2016 WL 8846261, at *6 (M.D. Fla. Aug. 16, 2016), report and recommendation adopted, No. 3:15-cv-1093-J-32PDB, 2016 WL 9049968 (M.D. Fla. Sept. 6, 2016) ("Failure to pay a debt owed in Florida with 'some other related substantial act in Florida that is purposefully directed toward the state or its residents establishes minimum contacts with Florida."). As explained above, WAPA failed to make payments due in Florida under the Note. See supra at 4–5. Nevertheless, WAPA contends that it did not conduct any related substantial acts in Florida. See Doc. 83 at 5–6. To support this argument, WAPA relies heavily on Burke Products, Inc. v. Access Elecs., LLC, 311 So. 3d 145 (Fla. 2d DCA 2020).

In Burke Products, the defendant, an Ohio corporation, sent a purchase order to the plaintiff, a Florida wholesale distributor, and the plaintiff shipped products to the defendant, fulfilling the order. See id. at 147. The parties'

purchase agreement required the defendant to make payments to the plaintiff's bank in Florida, but the defendant failed to pay the full sum due. See id. at 147–48. Although the Burke Products court found that the defendant failed to pay debts owed in Florida, the court determined that the defendant did not conduct any related substantial acts in Florida. See id. at 150–51. The court came to this conclusion because the defendant did not operate in Florida and the defendant's only contacts with Florida consisted of sending several purchase orders to the plaintiff and emailing and telephoning the plaintiff's employees in Florida to inquire into whether its order could be expedited. See id. at 147, 150–51.[2] While the Burke Products court acknowledged that routine communications directed at a Florida-based company by an out-of-state defendant could support a finding of sufficient minimum contacts, the court reasoned that email and telephone communications simply requesting that a purchase order be expedited, such as the defendant's, were insufficient. See id. at 147, 150–51.

Although WAPA does not operate or have employees in Florida, Doc. 21-1, this case is not closely analogous to Burke Products. Based on unrebutted evidence submitted by OpCo, WAPA has more numerous and more material contacts with Florida than the defendant in Burke Products. WAPA engaged in a business relationship with the Florida offices of OpCo for approximately seven

---

[2] In Burke Products, the defendant conceded that the breach-of-contract provision of Florida's long-arm statute was satisfied. 311 So. 3d at 148–49.

9

years. See Doc. 34-1 ¶¶ 6, 10, 11. The relationship was centered around two agreements—the Rental Agreement and the Note. Doc. 34-1 at 3–4. WAPA was required to make payments due under the Rental Agreement and the Note in Florida, and made some payments before ultimately breaching both agreements. Docs. 34-1 ¶¶ 8–10; 74 ¶¶ 10, 16. In addition, over the course of WAPA and OpCo's business relationship, WAPA transmitted numerous material communications to Florida-based OpCo employees: WAPA negotiated via telephone changes to the Rental Agreement that are memorialized in thirteen change orders, see Doc. 34-1 ¶ 12; WAPA conducted negotiations regarding its debt under the Note with Florida-based OpCo representatives, see Doc. 34-1 ¶ 13; and WAPA made various service requests to OpCo employees in Florida concerning the operation of equipment rented under the Rental Agreement, see Docs. 34-1 ¶ 17; 74 ¶ 9.

Taken together, WAPA's activities over the course of its business relationship with OpCo demonstrate that WAPA could have reasonably anticipated having to defend a lawsuit in Florida and purposefully availed itself of the privilege of conducting activities in this state. See Argos Global Partner Servs., LLC v. Ciuchini, 446 F. Supp. 3d 1073, 1088–89 (S.D. Fla. 2020) (asserting jurisdiction over a foreign company party to a share purchase agreement where the company directed more than forty communications into Florida via Skype, email, and telephone throughout the course of the negotiation

of the agreement; where the agreement required payment in Florida; amd where the agreement was for a one-time sale and did not contemplate continuous business relationship between the foreign company and a Florida-based entity); Exhibit Icons, LLC v. XP Companies, LLC, 609 F. Supp. 2d 1282, 1293–94 (S.D. Fla. 2009) (holding that numerous electronic communications, including 188 telephone calls, directed by the defendant to the forum state were sufficient to establish personal jurisdiction) (citing Burger King, 471 U.S. at 476); see also Cable/Home Comm. Corp. v. Network Prods., Inc., 902 F.2d 829, 858 (11th Cir. 1990) ("In our technologically sophisticated world permitting interstate business transactions by mail, wire and satellite signals, physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state"); Molex Co., LLC v. Andress, 887 F. Supp. 2d 1189, 1203 (N.D. Ala. 2012) (collecting cases). Thus, WAPA has not shown that requiring it to litigate this case in Florida would run afoul of the Due Process Clause.[3] See Exhibit Icons, 609 F. Supp. 2d at 1294 ("[M]odern transportation and communication have made it much less burdensome for an out-of-state Defendant to be sued in another state.") (quoting Cable/Home, 902 F.2d at 858) (internal quotation marks omitted).

---

[3] Contrary to WAPA's suggestions, the Court's ruling on the motion to dismiss for lack of personal jurisdiction was not contingent on whether meetings between WAPA and OpCo representatives physically occurred in Florida. See Docs. 55, 61.

## B. Count I: Breach of Promissory Note Under New York Law[4]

Under New York law, "[t]o successfully establish a prima facie claim for breach of a promissory note, a plaintiff must prove three elements: the defendant executed a promissory note, the note contained an unequivocal and unconditional obligation to repay, and the defendant failed to pay according to the terms of the instrument." Santander Bank, N.A. v. Rubin Trading Corp., 130 N.Y.S. 3d 210, 214 (N.Y. Sup. Ct. 2020); see also LG Cap. Funding, LLC, v. FLASR, Inc., 422 F. Supp. 3d 611, 624 (E.D.N.Y. 2018). "Once a plaintiff has established its prima facie entitlement to judgment as a matter of law, the burden then shifts to the defendant to submit evidence establishing the existence of a triable issue with respect to a bona fide defense." Porat v. Rybina, 111 N.Y.S.3d 625, 632 (N.Y. App. Div. 2019) (internal quotation marks omitted).

OpCo has established the elements of a breach of promissory note. OpCo has provided the Note dated May 1, 2019 and signed by WAPA's CEO, and WAPA admits that it executed the Note in favor of OpCo. The Note created an

---

[4] Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Estate of Todashev by Shibly v. United States, 815 F. App'x 446, 450 (11th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). Once the movant "demonstrate[s] the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine issue for trial." Johnson v. Unique Vacations, Inc., 498 F. App'x 892, 895 (11th Cir. 2012). Courts view the evidence in the light most favorable to the non-moving party. Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012).

unequivocal and unconditional obligation for WAPA to repay the debt. See Docs. 74-1 at 2; 73-4 at 8; 6 ¶ 4; 66 ¶¶ 4, 17; see also Santander Bank, 130 N.Y.S. 3d at 214 ("[The plaintiff] has established the first two elements [of a prima facie breach of promissory note claim] by providing the Promissory Note dated May 5, 2015 that was signed by the Borrower."). Under the Note, a failure by WAPA to make a past due payment within five business days' following written notice of nonpayment by OpCo constitutes a default event. Doc. 74-1 at 4. OpCo has submitted a declaration by Christopher King, Vice President of Commercial Support of OpCo, stating that WAPA only made six of the twenty required payment installments before the Note's Maturity Date and that WAPA did not cure its failure to make required payments under the Note after OpCo notified WAPA on February 6, 2020 and February 27, 2020 of its past due payments. See Docs. 74 ¶¶ 13, 15; 6-4; 6 ¶ 21; 66 ¶ 21.[5] WAPA admits that it has not made all of the required payments and that it did not cure its failure to pay after receiving the February 2020 notices. See Doc. 66 ¶¶ 19, 21 (admitting that WAPA hasn't made a payment since January 2020). In short, it is undeniable that WAPA breached the Note. See Group 1 Auto., Inc. v. Country Imported Car Corp., No. 07-CV-1454(RRM)(WDW), 2012 WL 11955634, at *9 (E.D.N.Y. Aug. 15, 2012) (reasoning that the defendant "breached the terms of the Promissory Note by

---

[5] OpCo also submitted copies of the February 2020 notices. See Doc. 6-4.

failing to pay the amount due thereunder by September 30, 2006, despite [the plaintiff's] demand for payment on December 1, 2006.").

WAPA has proffered several defenses, but they are unmeritorious as a matter of law. In its Answer (but not in its response to OpCo's motion for summary judgment), WAPA asserts that OpCo's breach of promissory note claim is "barred because . . . WAPA did not and could not waive its defense of sovereign immunity." Doc. 66 at 4. This defense fails because USVI immunities law does not preclude courts from entering judgments against WAPA, or preclude WAPA from using its assets to satisfy such judgments. See Lombardi v. Gov't of Virgin Islands, 33 V.I. 3, 9 (V.I. 1995) (reasoning that, although V.I. Code tit. 30 § 111(a) "exempts WAPA's property from judicial process," a plaintiff "can obtain a judgment against WAPA and WAPA can use its assets to satisfy such a judgment."); Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 429 (3d Cir. 1991) ("WAPA has a limited form of [statutory] immunity—it may be sued, but a victorious plaintiff cannot force it to pay any judgment entered.") (referencing V.I. Code tit. 30 § 111(a)).[6]

WAPA also contends that OpCo's claims are barred because OpCo materially breached the Rental Agreement. See Doc. 66 at 4. However, OpCo

---

[6] The Court need not determine whether WAPA waived its immunities at this stage. However, this issue may be material at the judgment enforcement stage.

correctly notes that WAPA agreed in the Note to waive all defenses, see Doc. 68 at 11, and such a waiver is enforceable under New York law. See Schron v. Grunstein, 961 N.Y.S.2d 361 (Table) (N.Y. Sup. Ct. 2012) ("[P]arties to an agreement may waive their defenses and [courts] will enforce validly executed waiver clauses."); see also Aaron v. Mattikow, 146 F. Supp. 2d 263, 266 (E.D.N.Y. 2001) ("[W]aiver clauses do serve to invalidate certain defenses in an action to enforce a promissory note."). In fact, under New York law, waiver clauses can "overcome virtually any defense to enforcement." Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC, No. 01 Civ. 6600(RLC), 2005 WL 3370542, at *7 (S.D.N.Y. Dec. 12, 2005); see, e.g., Keeseville National Bank v. Gulati, 599 N.Y.S.2d 175, 176 (N.Y. App. Div. 1993) ("[T]he notes contained an explicit waiver of 'all defenses, rights of set-off and rights to interpose counterclaims'; this language is sufficient to extinguish defendant's right to rely on any possible failure of consideration or lack of authority in his then attorney to complete the notes."). Thus, WAPA's defense pertaining to OpCo's alleged breach of the Rental Agreement is unavailing.[7] Cf. CSX Transp. Inc. v. Emjay Envtl. Recycling, Ltd.,

---

[7] OpCo also correctly argues that WAPA's defense concerning OpCo's alleged breach of the Rental Agreement is insufficient because it does not satisfy Federal Rule of Civil Procedure 8(a) pleading requirements. Doc. 68 at 11. The defense is a conclusory statement that makes no reference to how it is connected to OpCo's claims, which arise from the Note, not the Rental Agreement. Cf. Schmidt v. Synergentic Commc'ns, Inc., No. 2:14–cv–539–FtM–29CM, 2015 WL 997828, at *2 (M.D. Fla. Mar. 5, 2015) (striking failure to mitigate defense because it did not contain "any allegations connecting the defense to [the

No. 12-CV-1865(JS)(AKT), 2014 WL 4175798, at *7 (E.D.N.Y. Aug. 20, 2014) ("Defendant's waiver of any and all defenses and set offs is not subject to any other reasonable interpretation . . . and the Court must enforce the clear terms of the contract.").[8]

### C. Counts II and III

WAPA argues that summary judgment as to Counts II ("Services Rendered") and III ("Quantum Meruit") should be denied because these claims are duplicative of Count I ("Breach of Promissory Note."). See Docs. 83 at 7–8; 66 at 4. OpCo counters that WAPA's defense fails as a matter of law because, under New York law, parties may plead in the alternative causes of action for both breach of contract and equitable relief. See Docs. 73 at 25; 68 at 14. However, OpCo's statement of New York law lacks nuance. Under New York law, "a party may only proceed under both breach of contract and quasi-contract theories where there is a bona fide dispute as to the existence of a contract." Benex LC v. First Data Merch. Serv. Corp., No. 14-CV-6393(JS)(AKT), 2016 WL 1069657, at *6 (E.D.N.Y. Mar. 16, 2016) (dismissing an unjust enrichment claim with prejudice) (internal quotation marks omitted); see also Curtis Prop. Corp. v. Greif

---

plaintiff's] claims . . . .").

[8] The Court rejects any of WAPA's defenses not specifically addressed. WAPA's argument that OpCo's motion for summary judgment was filed prematurely and improperly is moot as WAPA has withdrawn its motion to compel jurisdictional discovery, Doc. 101, and all other discovery has been completed, Doc. 83 at 3.

Cos., 653 N.Y.S.2d 569, 571 (N.Y. App. Div. 1997) ("The general rule is that the existence of a valid and enforceable written contract governing a particular subject matter precludes recovery in quasi contract for events arising out of the same subject matter."). Accordingly, the "[New York] Court of Appeals . . . has upheld the dismissal of quasi-contract claims that are governed by a valid and enforceable written contract on the grounds that such a contract precludes recovery under a quasi-contract theory." Eastern Consol. Prop, Inc. v. Extell Dev. Co., 929 N.Y.S.2d 199 (Table) (N.Y. Sup. Ct. 2011). There is no dispute as to the existence of the Note, and OpCo's ability under New York law to enforce it. See Docs. 6 ¶ 17; 66 ¶ 17. Thus, summary judgment is due to be denied as to Counts II and III. Counts II and III are also due to be dismissed.

Accordingly, it is hereby

**ORDERED**:

1. Plaintiff Power Rental Op Co's Motion for Summary Judgment (Doc. 73) is **GRANTED** as to the breach of promissory note claim (Count I) and **DENIED** as to the Services Rendered (Count II) and Quantum Meruit (Count III) claims.

2. Plaintiff Power Rental Op Co's Services Rendered (Count II) and Quantum Meruit (Count III) claims (Doc. 6 at 6–7) are **DISMISSED**

without prejudice.[9]

3. Plaintiff Power Rental Op Co shall file a memorandum regarding its attorney's fees and costs and a proposed final judgment no later than **July 23, 2021**.[10] Defendant Virgin Islands Water & Power Authority may file a response no later than **August 9, 2021**.

4. Plaintiff Power Rental Op Co's Motion to Strike Defendant's Affirmative Defenses (Doc. 68) is **TERMINATED** as moot.

5. Defendant Virgin Islands Water & Power Authority's Motion to Compel Jurisdictional Discovery (Doc. 80) is **WITHDRAWN** as provided in Defendant's notice (Doc. 101).

**DONE AND ORDERED** in Jacksonville, Florida this 6th day of July, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

---

[9] If, for any reason, OpCo can't enforce its judgment under Count I, the Court may revisit its decision to dismiss Counts II and III.

[10] The Note stipulates, "If [a default event] occurs, [WAPA] shall promptly pay to [OpCo], upon demand, all reasonable costs and expenses incurred by [OpCo] in connection with the enforcement of its rights and remedies under this Note, including without limitation, reasonable attorneys [sic] fees and court costs." Doc. 73-1 at 5. OpCo has requested attorney's fees and court costs, but has not filed any documents specifying the fees and costs it has incurred litigating this case. Doc. 6 ¶ 26.

tn
Copies:

Counsel of record